PIERCE *v.* GIBSON.

Merchants of another state, through *A.* and *B.*, who were in the warehouse business in this state, purchased a certain amount of pork. The vendors gave written memoranda of the sales, and receipts for the money paid, and *A.* and *B.* agreed, in writing, to deliver said pork at *Toledo* to the order of said merchants as soon as navigation opened. *Held*, that these documents transferred the possession and property of the pork to the purchasers. *Held*, also, that these documents, being indorsed and delivered to a merchant in *New York* in consideration of advances of money in the usual course of trade, transferred to him the legal possession of the property and made him an actual purchaser to the extent of his advances.

*Held*, also, that an attachment issued subsequently to said transfer to said merchant, at the instance of a supposed creditor of the original purchasers, could not be maintained; and the mere fact that the attachment issued, was no evidence of indebtedness to the attachment-plaintiff.

The statute does not require a delivery of goods sold where the contract is in writing, or where the purchase-money, or a part of it, is paid.

*Tuesday,
January 7,
1851.*

APPEAL from the *Tippecanoe* Circuit Court.

BLACKFORD, J.—This was an action of replevin commenced on the 8th of *May* 1844, by *Edmund T. H. Gibson* against *Martin L. Pierce*.

The declaration contains two counts. The first states that the defendant, on, &c., at, &c., wrongfully took the goods and chattels, viz., 375 barrels of mess pork and 221 barrels of prime pork, of the plaintiff's, of the value of 3,840 dollars, and unlawfully detained the same. The second count is for unlawfully detaining the same quantity of other pork of the plaintiff's, of the same value.

The defendant pleaded *non cepit* to the first count, and *non detinet* to the second. He also pleaded to the whole declaration, property in the *State Bank of Indiana;* property in *Benbridge* and *Mix;* property in *Walker, Rogers,* and *Company;* property in the defendant; property in *McQueen* and *McKay.* There was also a plea alleging that the property was in *McQueen* and *McKay,* and stating that the defendant was sheriff of *Tippecanoe* county; that the *State Bank of Indiana* sued out a writ of foreign attachment against the property of *McQueen* and *McKay;* that the defendant, by virtue of said writ, attached the

said pork, as he lawfully might do; that he duly returned said writ; and that the attachment-suit was still pending.

Replications were filed in denial of the special pleas.

Verdict and judgment for the plaintiff.

The material facts are as follow :

On the 28th of *March*, 1844, *Benbridge* and *Mix*, of *Lafayette*, in this state, as agents of *McQueen* and *McKay*, of *Detroit*, in *Michigan*, bought eleven barrels of mess pork of *J. W. Powers;* which pork was in the warehouse of said *Benbridge* and *Mix* at *Lafayette*. Also, on the same day, said *Benbridge* and *Mix*, as agents of said *McQueen* and *McKay*, bought of *R.* and *D. N. Darlinton* 365 barrels of mess pork, and 225 barrels of prime pork. The pork, thus bought of *Darlintons*, was, at the time of the sale, in the warehouse of *Walker, Rogers*, and *Company*, in *Lafayette;* and the *Darlintons* gave to *Benbridge* and *Mix* an order for the same on said *Walker, Rogers*, and *Company*, which order the latter verbally accepted. This pork was marked with the letter *B*. After such sale, *Walker, Rogers*, and *Company* charged the storage to *Benbridge* and *Mix*.

The whole of said pork, purchased of *Powers* and of the *Darlintons* by *Benbridge* and *Mix*, was paid for with money furnished by an agent of *McQueen* and *McKay*. At the time of said purchases, *Benbridge* and *Mix*, in the name of *McQueen* and *McKay*, took from the vendors bills of parcels, with receipts for the purchase-money; and, at the same time, they, *Benbridge* and *Mix*, gave warehouse receipts to *McQueen* and *McKay* for the said pork.

Afterwards, on the 17th of *April*, 1844, *McKay*, of said firm of *McQueen* and *McKay*, called on the plaintiff, *Gibson*, at his store in the city of *New York*, he, *Gibson*, being a commission-merchant there. *McKay* then produced to *Gibson* the said bills of parcels with receipts for the purchase-money, and said warehouse receipts, and requested him, *Gibson*, to make an advance on the produce. *Gibson* agreed to make an advance upon the indorsement and delivery to him of the said warehouse receipts. It

was agreed that the property mentioned in the receipts should come into the hands of *Gibson* to be sold by him; that he should deduct from the proceeds the advances made by him, with the expenses, charges, and commissions; and that the residue should be subject to the. order of *McQueen* and *McKay*. The warehouse receipts were accordingly indorsed by *McQueen* and *McKay* to *Gibson;* and the latter thereupon advanced to the former 3,306 dollars and 25 cents. At the time of this transaction, *McQueen* and *McKay's* credit and character in *New York* were good; and there is nothing to show but that *Gibson* acted in the affair with good faith.

The following are copies of said papers and indorsements:

"*Lafayette, Mar.* 28, 1844.    Messrs. *McQueen* and *McKay*, bot. of *J. W. Powers*, eleven barrels of mess pork, at \$7 50—\$82 50.    Rec'd payment.—*J. W. Powers*."

"Received the above in store to be shipped to *Toledo*, so soon as the navigation opens, to the order of Messrs. *McQueen* and *McKay* of *Detroit, Michigan.—Benbridge* and *Mix*." (Indorsed as follows:)  " *New York, April* 17, 1844.    Deliver the within to *E. T. H. Gibson* or order.— *McQueen* and *McKay*."

"*Lafayette,* 28 *March*, 1844.    Messrs. *McQueen* and *McKay*, bot. of *R.* and *D. N. Darlinton*,

" 365 bls. mess pork, at 7 50 · · · · · · · · · · · · · · · · 2,737 50
" 225 do. prime   do.,   5 60 · · · · · · · · · · · · · · · 1,260 00
                                                          ——————
                                                  " 3,997 50

" Rec'd payment.—*R.* and *D. N. Darlinton*."

"Received, *Lafayette, March* 28, 1844, the above pork in store to be shipped on opening of the canal navigation to *Toledo*, to the order of Messrs. *McQueen* and *McKay*, of *Detroit, Michigan.—Benbridge* and *Mix*" (Indorsed as follows:)  " *New York, April* 17, 1844.    *Deliver* the within 590 barrels pork to *E. T. H. Gibson* or order.    (Signed) *McQueen* and *McKay*."

At the time of said indorsements by *McQueen* and *McKay* of said warehouse receipts, they wrote a letter to

*Ludlow* and *Babcock*, their shipping agents at *Toledo, Ohio*, and delivered the same to *Gibson* to be forwarded; and *Gibson*, accordingly, forwarded it by mail. That letter is as follows:

"*New York*, 17 *April*, 1844. Messrs. *Ludlow* and *Babcock, Toledo:* Gentlemen—We have this day received an advance from *E. T. H. Gibson*, Esq., on the following lots of pork, which you will please have the goodness to deliver to his order, and to comply with his instructions relative to the shipment, viz.:

"365 barrels mess pork ⎫ From warehouse of *Walker*,
"225    do.    prime    do. ⎬    *Rogers*, and *Co.*
"  11    do.    mess    do.    *Benbridge* and *Mix*.
"300    do.    do.    do.    *Hamilton* and *Williams*.
"350    do.    do.    do.    *Hanna, Hamilton*, and *Co.*
"200    do.    flour,    *D.* and *J. A. F. Nicholls*.

"Respectfully, Gentlemen, your obedient servants.— *McQueen* and *McKay*."

The plaintiff, *Gibson*, having heard that some of *McQueen* and *McKay's* drafts had been protested, sent, on the 23d of *April*, 1844, one of his clerks (*Hoyt*) to attend to the shipping of said pork. *Hoyt* arrived at *Lafayette* in the evening of the 1st of *May*, 1844. He could not get the pork mentioned in the declaration, and which is included in said warehouse receipts, as an attachment had been levied on the same, on the last-named day, by the defendant as sheriff of *Tippecanoe* county. The attachment was in favor of the *State Bank of Indiana* against *McQueen* and *McKay*.

The question presented by this case is, was the pork levied on by the defendant, at the time of the levy, the property of *Gibson?*

There is no doubt but that *McQueen* and *McKay*, at the time of their indorsement of the warehouse receipts, were the owners of the pork. The title of *Gibson* depends upon the effect, under the circumstances, of the indorsement to him of those receipts. The effect of such indorsements has been recently decided by the Supreme Court of the *United States. Gibson* v. *Stevens*, 8 Howard,

384.  According to that decision, it must be considered that *Gibson*, to the extent of his advances in this case, was purchaser, from *McQueen* and *McKay*, of the pork in question; and that the legal title to the pork was conveyed to him to protect his advances.  The subject is fully discussed in the case first cited, and we concur in the opinion there given.

Considering the transaction in *New York* in the character of a sale, the case is without difficulty.  There is nothing to show but that *Gibson* acted with good faith.  The defendant relies on the want of delivery of the pork to the purchaser.  But when the purchase was made the pork was at a considerable distance from the place of sale; and there was no want of diligence on *Gibson's* part, after his purchase, to obtain the possession.  Besides, a delivery of the goods sold is not essential, at common law, to the validity of the sale; nor does the statute of frauds require a delivery, where the contract is in writing, or where the purchase-money or a part of it is paid.

The present case is more favorable to the plaintiff than that of *Gibson* v. *Stevens*, above referred to.  In the case cited, it appeared that *McQueen* and *McKay* were indebted to the attachment-plaintiff; but there was no such indebtedness shown in the case before us.  There is nothing in the record on the subject, except the mere fact of the issuing of the attachment.  That fact is no evidence, in this case, that the bank was a creditor of *McQueen* and *McKay*.

There are here no creditors of, nor purchasers from, *McQueen* and *McKay*, in the way of the plaintiff's claim to the property.

We are satisfied from the facts of the case, that the judgment for the plaintiff is right.

*Per Curiam.*—The judgment is affirmed with 5 *per cent.* damages and costs.

*J. Morrison* and *S. A. Major*, for the appellant.

*Z. Baird*, for the appellee.