JOHN H. WALSH *vs.* FIRE ASSOCIATION OF PHILADELPHIA.

Suffolk.   March 28. — September 4, 1879.

A. procured a policy of insurance against loss by fire " on his dwelling-house."  He had previously conveyed the land, on which the house stood, by warranty deed, to B., to secure the latter from liability as a surety on a recognizance, B., at the same time and as part of the same transaction, giving A. an instrument of defeasance, which was not recorded.   A loss by fire occurred, and the land was subsequently reconveyed to A.   *Held*, that A. had an insurable interest; that, in the absence of any provision in the policy that the interest of the assured should be particularly described, the description in the policy was sufficient; and that a statement by him in his proof of loss that "the property belongs exclusively to me, and no one else has any interest therein," did not avoid the policy.

CONTRACT on a policy of insurance, dated September 6, 1876, by which the defendant insured the plaintiff for the term of three years, " on his frame dwelling-house, with store," against loss or damage by fire; and it was agreed in the policy that, "if the assured shall make any attempt to defraud the said association." the risk should cease, and the policy be null and void.   At the

trial in the Superior Court, before *Dewey*, J., without a jury, the following facts appeared:

On August 5, 1876, the plaintiff, who was the owner in fee of the land upon which the building afterwards insured stood, conveyed the land to Patrick Campbell; the latter, at the same time, and as part of the same transaction, giving to the plaintiff a paper writing, signed and sealed, stating that the conveyance was made simply to secure him from any liability as a surety on a recognizance for the appearance of Rosanna Walsh in a criminal suit, the land to be reconveyed to the plaintiff upon Campbell being held harmless. On November 25, 1876, Campbell, by a warranty deed, conveyed the land to the plaintiff, who on the same day conveyed it to John N. Devereux for the same purpose that the conveyance was made to Campbell, and Devereux gave a similar paper to the plaintiff. Neither of these paper writings was ever recorded, and they were admitted in evidence against the defendant's objection.

On April 14, 1877, a loss by fire occurred, and, after that, Rosanna Walsh having appeared as required by the recognizance, Devereux released the land to the plaintiff, who had remained in possession of it from the time of the conveyance to Campbell; and neither Campbell nor Devereux had been on the land, or in any way interfered with the plaintiff's sole use of it. In the proofs of loss, the plaintiff made oath that "the property belongs exclusively to me, and no one else has any interest therein."

The defendant asked the judge to rule that, upon the evidence, the plaintiff could not recover. The judge declined so to rule; found that the plaintiff had an insurable interest in the property; that he acted in good faith in procuring the policy in his own name, and in his representations in the proofs of loss that the property belonged exclusively to him; and found for the plaintiff. The defendant alleged exceptions.

*J. W. Keith*, for the defendant.

*J. B. Richardson*, for the plaintiff.

COLT, J. The plaintiff had an insurable interest in the building at the time the policy was issued, which continued until the property was destroyed by fire. *Williams* v. *Roger Williams Ins. Co.* 107 Mass. 377. He remained the equitable owner of the whole estate after the conveyances to Campbell and to Dev-

ereux, and retained the evidence of such ownership in the written instruments of defeasance, which were delivered to him as part of each transaction. The title of both Campbell and Devereux in equity was that of mortgagees, under mortgages conditioned to secure them from liability as sureties in a criminal recognizance.

The rights of the parties under this contract of insurance are to be settled according to the relations which were in fact created between the parties to these conveyances, although the defeasances were never recorded. It is not a question between the plaintiff and attaching creditors and purchasers without notice.

In the absence of any specific inquiry by the insurers, or any special stipulation in the policy, the interest of the plaintiff as equitable owner, upon whom the whole loss by fire must fall, was sufficiently described in the policy by the words "his dwelling-house." *Strong* v. *Manufacturers' Ins. Co.* 10 Pick. 40. *Fowle* v. *Springfield Ins. Co.* 122 Mass. 191. *Little* v. *Phœnix Ins. Co.* 123 Mass. 380.

The policy in this case contained no provision requiring the interest of the assured, if other than entire, unconditional, sole ownership, to be so expressed; no provision forbidding a mortgage of the property; and no requirement that the interest of the assured should be particularly described in the proofs of loss. The question is not like that presented in *Foote* v. *Hartford Ins. Co.* 119 Mass. 259. There the policy contained a provision by which it was to become void if any change should take place in the title or possession of the property, "whether by sale, transfer or conveyance, legal process or judicial decree." After the policy was issued, the plaintiff conveyed his equity of redemption to the mortgagee, and took back a bond for a reconveyance of the same to him, on payment of a sum named, which was the amount due on the mortgage. The bond was not recorded, and the question was as to the effect of the transaction upon the plaintiff's rights under a policy containing such a clause. It was decided that the deed effected a change of title and possession within the meaning of the clause; not that the plaintiff might not still have an equitable title which might constitute an insurable interest which

would be covered by a policy like the one issued to the plaintiff in this case, nor that the unrecorded defeasance was not admissible in evidence against the defendant. Here the question is whether the plaintiff had an insurable interest at the time the policy was issued.

The policy appears to have been issued without any formal application, or any representation by the plaintiff. And upon the case stated in the bill of exceptions, there is nothing to show that the findings of the court, that the plaintiff, in procuring the policy in his own name, and in making the representations contained in the proofs of loss, were not warranted by the evidence.

*Exceptions overruled.*