### ARGUED AND DETERMINED

#### IN THE

# SUPREME JUDICIAL COURT

#### OF

# MASSACHUSETTS.

---

JULIUS HALLGARTEN & others *vs.* JONATHAN OLDHAM.

Suffolk.   Jan. 12. — April 3, 1883.   FIELD & W. ALLEN, JJ., absent.

The effect of the indorsement and delivery, in another State, of a private ware-
house receipt for goods stored in this State, is to be determined by the law of
this State.

The indorsement and delivery, by the bailor, of a receipt for goods stored in a
private warehouse, in which the bailee undertakes to deliver the goods to the
bailor upon the payment of charges, but not to hold or deliver to his order, do
not pass the title in the goods to the indorsee, as against a creditor of the bailor,
who attaches the goods before notice of such indorsement has been given to
the bailee.

REPLEVIN of 497 slabs of tin.   Writ dated September 29,
1880.   The case was submitted to this court on agreed facts, in
substance as follows:

The plaintiffs at the times hereinafter mentioned were bank-
ers, and one Lissberger was a dealer in metals, all doing busi-
ness and domiciled in the State of New York.   Lissberger was
largely indebted to the plaintiffs for advances of money made in
New York; and, as security therefor, the plaintiffs held mer-
chandise, warehouse receipts, and other property, deposited with
them in New York by Lissberger.

On or about May 3, 1880, Lissberger applied to the plaintiffs,
in New York, for a release of security to the amount of $11,000,

so held by them, and offered to substitute therefor a warehouse
receipt and weigher's certificate for certain tin of the same
value, then, and until service of the writ in this action, stored
in a warehouse belonging to one Damon, on Damon's Wharf, in
the control of Gardner Prouty, in Boston, the receipt and prop-
erty to be held as security in like manner with the securities
for which it was substituted. The receipt, signed "Gardner
Prouty, wharfinger," was as follows: "No. 919. Boston, April
26, 1880. Received on storage, at Damon's Wharf in store No.
8, for H. Lissberger, the following-described merchandise from
bark Mohican, which we promise to deliver to him upon the
payment of charges. Marks: Four hundred and ninety-seven
(497) slabs tin." Prouty had received the tin at Boston, and
there signed the receipt, and delivered it and the weigher's cer-
tificate. The plaintiffs assented to Lissberger's proposition, re-
ceived, in the usual course of business from Lissberger, the
weigher's certificate and receipt duly indorsed in blank by Liss-
berger, and delivered to him the property for which he had
applied. This transaction took place in New York. No record
of this transaction, or of any part of it, was made on the rec-
ords of the city of Boston, and the tin was not delivered to
the plaintiffs, except so far as what is above stated constituted
a delivery. The warehouse in which the tin was stored had
been largely and exclusively used for the storage of property
belonging to others than the owners of the warehouse for more
than twenty years preceding this transaction, and the form of
warehouse receipts given during that period by Prouty was like
the one in this case, with this qualification, that, about eleven
years before this transaction, there was introduced into the
receipt, after the word "deliver," the word "to" followed by a
blank space for the insertion of the word "him" or "them,",
this addition not having previously formed a part of the re-
ceipt.

   The warehouseman who issued the receipt in this case was
not a public warehouseman, appointed under the provisions of
the St. of 1860, c. 206, and the acts amendatory thereof. The
debt of Lissberger for said advances is still unpaid, and exceeds
the value of all the securities. The plaintiffs retained the receipt
and certificate without action until August 7, 1880, when they

gave notice to the warehouseman that they held the receipt, having first learned on the previous day of the issuing of the attachment hereinafter mentioned.

On June 15, 1880, the defendant, a deputy sheriff for Suffolk county, attached the tin as the property of Lissberger, upon a writ sued out of the Superior Court by Cyrus Wakefield and others against Lissberger, to recover a debt. The writ was returnable at July term 1880, and was entered at that term; and at April term 1881 judgment thereon was rendered for Wakefield and others in the sum of $27,000 and upwards, which judgment is in no part satisfied.

The tin was held by the defendant under the attachment until the service of the writ in this action. There is no fraud or bad faith imputed to the plaintiffs in any of their dealings, or in their omission to give notice as aforesaid; and neither of the plaintiffs in the action of Wakefield and others against Lissberger, nor the defendant in this action, had, until after August 7, 1880, any notice or knowledge of the transaction between Lissberger and the plaintiffs, or of any interest or claim of the plaintiffs in or to the tin, unless they are affected with notice by reason of the matters hereinbefore stated.

The plaintiffs made due demand on the defendant for the amount of their debt, and otherwise complied with the provisions of the Gen. Sts. *c.* 123, § 63, and the debt was not paid or tendered; and, after the expiration of ten days from the demand, they brought this action.

The law of New York, if material, is as stated in the judgments of its courts in the cases of *Wilkes* v. *Ferris*, 5 Johns. 335, and *Yenni* v. *McNamee*, 45 N. Y. 614, which cases may be referred to.

If the plaintiffs were entitled to recover, judgment was to be entered for them, with damages in the sum of one dollar, and costs; otherwise, for the defendant, for a return, damages to be assessed, and costs.

*S. Bartlett & S. Lincoln*, for the plaintiffs. 1. Transfers of personal property are controlled by the law of the domicil of the parties. *Rhode Island Central Bank* v. *Danforth*, 14 Gray, 123. *Parsons* v. *Lyman*, 20 N. Y. 103. *Toledo Bank* v. *Shaw*, 61 N. Y. 283. By the comity of the States of the Union, each respects

the law of the others, unless it is in direct contradiction of some statute or policy of its own. This is especially true of personal contracts. *Kelly* v. *Crapo*, 45 N. Y. 86. *Crapo* v. *Kelly*, 16 Wall. 610. *Parsons* v. *Lyman*, 20 N. Y. 112. *Banchor* v. *Gregory*, 9 Mo. App. 102. *Livermore* v. *Jenckes*, 21 How. 126. *Ockerman* v. *Cross*, 54 N. Y. 29. *Pond* v. *Cooke*, 45 Conn. 126. *Holmes* v. *Remsen*, 4 Johns. Ch. 460. *Harris* v. *Bradley*, 2 Dill. 284. The law of New York should govern, and by it the plaintiff acquired an absolute title. *Wilkes* v. *Ferris*, 5 Johns. 335, 344. *Yenni* v. *McNamee*, 45 N. Y. 614.

2. By the indorsement and delivery of maritime bills of lading, the absolute title to, and right of possession of, the property which they represent passes, as against all the world, without notice to the bailee. *Barber* v. *Meyerstein*, L. R. 4 H. L. 317. This effect results, not from the terms of the contract, but from the custom of merchants, sanctioned by courts. The same principle applies to the receipts or bills of lading of inland carriers. *Green Bay National Bank* v. *Dearborn*, 115 Mass. 219. *Forbes* v. *Boston & Lowell Railroad*, 133 Mass. 154. *Dows* v. *Greene*, 24 N. Y. 638. *Emery* v. *Irving Bank*, 25 Ohio St. 360. *Holmes* v. *German Security Bank*, 87 Penn. St. 525. *Joslyn* v. *Grand Trunk Railway*, 51 Vt. 92.

The same principle applies also to warehouse receipts. They are similar to bills of lading in form and substance. Both are creatures of commercial usage, sanctioned by courts. Both are contracts of a bailee: one, that he will transport and deliver property; the other, that he will hold and deliver it. The assignment of one should be as effectual as the assignment of the other. Inland bills, whether they contain the word "assigns" or not, and whether assigned or not, pass the title and possession to one to whom they are delivered *bona fide* and for valuable consideration. *Toledo Bank* v. *Shaw, ubi supra*. *City Bank* v. *Rome, Watertown & Ogdensburgh Railroad*, 44 N. Y. 136. *Emery* v. *Irving Bank, ubi supra*.

Two conditions are essential to effect a valid transfer of personal property, namely: (1.) An agreement to transfer the right of property. This is sufficient to pass the title as between the parties. *Gibson* v. *Stevens*, 8 How. 384, 400. (2.) There must be a delivery of the property to give the right of possession as

against third parties, and this may be actual or symbolical. By commercial usage, symbolical delivery may be effected by a delivery of muniments of title. *Cairo National Bank* v. *Crocker*, 111 Mass. 163. *Green Bay National Bank* v. *Dearborn, ubi supra. Forbes* v. *Boston & Lowell Railroad, ubi supra. Dickinson* v. *Central National Bank*, 129 Mass. 279. *Boston Music Hall* v. *Cory*, 129 Mass. 435. *Russell* v. *O'Brien*, 127 Mass. 349. *Chicago National Bank* v. *Bayley*, 115 Mass. 228. *Hathaway* v. *Haynes*, 124 Mass. 311. *Joslyn* v. *Grand Trunk Railway, ubi supra. Farmers & Mechanics' Bank* v. *Logan*, 74 N. Y. 568. *Haille* v. *Smith*, 1 B. & P. 563. *Ryall* v. *Rolle*, 1 Atk. 165. *Atkinson* v. *Maling*, 2 T. R. 462.

Both these conditions were fulfilled by Lissberger's indorsement and delivery of the warehouse receipt to the plaintiffs. A warehouse receipt is a muniment of title. By its indorsement and delivery the property passes. *Pratt* v. *Parkman*, 24 Pick. 42. *Russell* v. *O'Brien, ubi supra. Carter* v. *Willard*, 19 Pick. 1. *Chapman* v. *Searle*, 3 Pick. 38, 45. *Lucas* v. *Dorrien*, 7 Taunt. 278. *Zwinger* v. *Samuda*, 7 Taunt. 265. *Harris* v. *Bradley, ubi supra. Shepardson* v. *Cary*, 29 Wis. 34. *Hale* v. *Milwaukee Dock Co.* 29 Wis. 482.

The rule that symbolical delivery transfers the property is no longer supported on the ground that actual delivery is impossible on account of the inaccessibility of the property, as, for instance, property at sea. Property, although not inaccessible, is transferred by the indorsement and delivery of inland bills of lading. No distinction can be drawn between inland bills of lading and warehouse receipts, so far as the accessibility of the property which each represents is concerned.

It is admitted that the delivery of a bill of parcels, of a mortgage, or of a bill of sale, does not give the right of possession except as between the parties; but such documents are not symbols, and therefore symbolical delivery cannot be effected through them.

The principle contended for is not touched by the doctrine applicable to delivery orders, that is to say, orders of an owner upon a bailee who has not entered into a written contract with the bailor to hold or deliver. Such mere delivery order given by vendor to purchaser constitutes no delivery of the property

to which it relates. Benjamin on Sales (2d Am. ed.) § 814. *Boardman* v. *Spooner*, 13 Allen, 353.

The position of the plaintiffs is supported by the Supreme Court of the United States, in *Gibson* v. *Stevens, ubi supra;* and by the courts of New York, in *Wilkes* v. *Ferris, ubi supra,* and *Yenni* v. *McNamee, ubi supra;* and by the courts of other States. See *Joslyn* v. *Grand Trunk Railway, ubi supra; Skilling* v. *Bollman*, 6 Mo. App. 76; *Pierce* v. *Gibson*, 2 Ind. 408; *Burton* v. *Curyea*, 40 Ill. 321; *Toledo Bank* v. *Shaw, ubi supra; City Bank* v. *Rome, Watertown & Ogdensburgh Railroad, ubi supra; Emery* v. *Irving Bank, ubi supra;* Smith's Lead. Cas. (6th Am. ed.) 1086, note to *Lickbarrow* v. *Mason.*

In England, until the decision in *Farina* v. *Home*, 16 M. & W. 119, in 1846, the indorsement of warehouse certificates passed the title and right of possession, in the same manner as the indorsement of a bill of lading. Since that case, the English law on this subject has been thrown into confusion by decisions of courts and acts of Parliament, and furnishes no guide. Dallas, J., in *Lucas* v. *Dorrien*, 7 Taunt. 278. Benjamin on Sales (2d Am. ed.) § 817. So far as the English law since 1846 has established any distinction between maritime and inland bills of lading, based on the accessibility or inaccessibility of the property represented, it has been wholly disregarded in this country. See cases previously cited.

A symbolical delivery has the full effect of an actual delivery, and need not be supplemented by actual possession of the property when it becomes accessible. *Gibson* v. *Stevens, ubi supra. Dows* v. *Greene, ubi supra. Barber* v. *Meyerstein, ubi supra. Glyn* v. *East & West India Dock Co.* 29 W. R. 316. *Lickbarrow* v. *Mason*, 2 T. R. 63. *The Mary Ann Guest*, Olcott Adm. 498. *Skilling* v. *Bollman, ubi supra. Shepardson* v. *Cary, ubi supra. Hale* v. *Milwaukee Dock Co. ubi supra. Harris* v. *Bradley, ubi supra.*

Notice to the warehouseman was unnecessary. *Zwinger* v. *Samuda, ubi supra. Lucas* v. *Dorrien, ubi supra. Dickinson* v. *Central Bank, ubi supra. Boston Music Hall* v. *Cory, ubi supra. City Bank* v. *Rome, Watertown & Ogdensburgh Railroad, ubi supra.* The reason of the rule is this: whoever seeks to acquire title from a party claiming to own property on shipboard

or in a warehouse is, by commercial usage, affected with notice that property thus situated is, or is presumed to be, always the subject of a written contract with the bailee, the delivery of which contract, *bona fide*, passes the title and possession of that property. He is thus put upon his inquiry, and his title depends upon the result of that inquiry.

The claims of the plaintiff conform to the commercial usage of the whole country, and this usage should be recognized and sanctioned by the court. The principle has been incorporated into the statute law of many States, — and also into that of Massachusetts relating to public warehouses. In principle, no distinction exists between the law of public and that of private warehouses.

*F. E. Parker*, for the defendant.

HOLMES, J. Two questions only are raised: the main one, whether enough had been done to give the plaintiffs a good title as against the attaching creditor; the other, a preliminary inquiry whether the sufficiency for that purpose of what was done is to be determined by the law of New York or of Massachusetts.

To dispose first of the preliminary matter. This case must be governed by the ordinary rules applicable to similar transactions taking place wholly within this State. When a sale, mortgage or pledge of goods within the jurisdiction of a certain state is made elsewhere, it is not only competent, but reasonable, for the state which has the goods within its power to require them to be dealt with in the same way as would be necessary in a domestic transaction, in order to pass a title which it will recognize as against domestic creditors of the vendor or pledgor. This requirement is not peculiar to Massachusetts, but has the sanction of the highest courts of the United States and of other States. *Lanfear* v. *Sumner*, 17 Mass. 110. *May* v. *Wannemacher*, 111 Mass. 202, 208, 209. *Green* v. *Van Buskirk*, 5 Wall. 307, 312; *S. C.* 7 Wall. 139, 150, 151. *Guillander* v. *Howell*, 35 N. Y. 657. *Olivier* v. *Townes*, 2 Mart. (N. S.) La. 93. *Clark* v. *Tarbell*, 58 N. H. 88. *Rice* v. *Courtis*, 32 Vt. 460. *Martin* v. *Potter*, 34 Vt. 87, 88. See also Dicey on Domicil, 262, rule 57. It is not necessary for the purposes of this case to consider whether it should be dealt with as an exception to general

rules, as it is regarded in *Rhode Island Central Bank* v. *Danforth*, 14 Gray, 123, cited for the plaintiffs, or as an illustration of a sound and fundamental principle.

We pass to the question whether enough had been done to give the plaintiffs a good title as against the defendant. As this is to be decided by the same rules as if the whole transaction had taken place in Massachusetts, it is immaterial whether the indorsement of the warehouse receipt, if effectual, created a pledge, a mortgage, or, as has been suggested, a transfer of the absolute title in trust to accomplish the purposes of the transfer. *Farmers & Mechanics' National Bank* v. *Logan*, 74 N. Y. 568, 582, 583. See also *De Wolf* v. *Gardner*, 12 Cush. 19, 26 ; *Gibson* v. *Stevens*, 8 How. 384, 400 ; *The Thames*, 14 Wall. 98, 108 ; *Dows* v. *National Exchange Bank*, 91 U. S. 618, 632 ; *Casey* v. *Cavaroc*, 96 U. S. 467, 477 ; *Glyn* v. *East & West India Dock Co.* 7 App. Cas. 591, 606 ; *S. C.* 6 Q. B. D. 475, 480, 490, 499, and 5 Q. B. D. 129, 130. For, as against attaching creditors, the law of Massachusetts has always required a delivery, as well in the case of an absolute transfer, even a sale, as in that of a chattel mortgage or pledge, from the time of *Lanfear* v. *Sumner*, *ubi supra*, down to the latest volumes of reports. *Burge* v. *Cone*, 6 Allen, 412. *Dempsey* v. *Gardner*, 127 Mass. 381. Cf. *Harlow* v. *Hall*, 132 Mass. 232.

*Lanfear* v. *Sumner* has been criticised in England, where the law appears to be otherwise ; Blackburn on Sales, 327, 328 ; *Meyerstein* v. *Barber*, L. R. 2 C. P. 38, 51 ; a fact to be remembered in dealing with the English cases. But the plaintiffs do not attempt to overthrow the long-established rule of this State ; they say that they have satisfied it. And their argument is that the warehouse receipt, being the key to the property, has become a symbol representing it by a commercial usage of which the court will take notice, and that therefore an indorsement and delivery of the receipt, under circumstances in which they carry an interest in the goods, amount also, by construction of law, to a delivery of the goods within the requirements of the rule. It is said that, in adopting this view, we should only be extending the principles already applied to bills of lading to other documents which are dealt with by merchants on the same footing.

The difficulty in dealing with this argument arises largely from the very great ambiguity attaching to the word "delivery," in both American and English cases. It has been used often when it is evident that the true question was only whether the property had passed. The simplest explanation even of *Gibson* v. *Stevens, ubi supra,* would be that delivery was not necessary to pass property as against third persons by the law of Indiana. See *Pierce* v. *Gibson,* 2 Ind. 408, 412.

But the delivery required by the rule in *Lanfear* v. *Sumner* is delivery in its natural sense, that is, a change of possession. And it cannot be borne in mind too carefully that the only matter now under discussion is whether there has been a delivery in this sense, or dealings having the legal effect of such delivery, of the goods referred to in the warehouse receipt. Cases which turn on a question of property only, or in which delivery or its equivalent was not essential, whether because the question arose between the parties to the sale or mortgage, or because delivery was not necessary in that jurisdiction to complete the transaction as against third persons, or for any other reason, are not precedents in point. Many such cases will be found which speak of documents as symbols of the goods. But that expression will not help us, unless it means that a transfer of the documents has the effect of a delivery of the goods as against an attaching creditor, who would be preferred unless the goods had changed hands.

The question is, then, how the transfer of any document can have that effect. The goods are in the hands of a middleman, and they remain there. A true change of possession could only be brought to pass by his becoming the servant of the purchaser for the purpose of holding the goods, so that his custody should become the possession of his master. But this is not what happens, and it has been held that less would satisfy the law. A carrier, or the warehouseman in this case, is not the servant of either party *quoad* the possession, but a bailee holding in his own name, and asserting a lien for his charges against all parties. He alone has possession of the goods, whether the document is transferred or not.

But it has been held that the principle of the rule requiring a delivery is satisfied, although the letter of it is not, if the possessor of the goods becomes the purchaser's bailee. *Tuxworth* v.

*Moore,* 9 Pick. 347. *Russell* v. *O'Brien,* 127 Mass. 349, 354. *Dempsey* v. *Gardner,* 127 Mass. 383. Now it is obvious that a custodian cannot become the servant of another in respect of his custody except by his own agreement. And, *a fortiori,* when that custodian does not yield, but maintains his own possession, it is clear that his custody cannot enure to the benefit of another, as if it were the possession of that other, unless the bailee consents to hold for him subject to his own rights. The only way, therefore, in which a document can be a symbol of goods in a bailee's hands, for the purposes of delivery to a purchaser, is by showing his consent to become the purchaser's bailee.

It may or may not be true, that, if a warehouse receipt contains an undertaking to deliver to order, that undertaking is to be regarded as an offer by the warehouseman to any one who will take the receipt on the faith of it, and that it will make him warehouseman for the indorsee, without more, on ordinary principles of contract. That is the argument of Benjamin on Sales (2d ed.) 676 *& seq.,* criticising *Farina* v. *Home,* 16 M. & W. 119, and Blackburn on Sales, 297. But the criticism and the case agree in the assumption, that the only way in which the indorsement of a document of title can have the effect of a delivery is by making the custodian bailee for the holder of the document, and that he cannot be made so, otherwise than by his consent. The necessity for notice, in those cases where notice is necessary, stands on the same ground. If the custodian has not assented in advance, he must assent subsequently; and the principle is the same whether an express acceptance of a delivery order be required, or it is held sufficient if he does not dissent when notified. *Boardman* v. *Spooner,* 13 Allen, 353, 357. Cf. instructions of Shaw, C. J. to the jury in *Carter* v. *Willard,* 19 Pick. 1, 3; *Bentall* v. *Burn,* 3 B. & C. 423.

It is true that there are one or two decisions of this court which it is somewhat hard to reconcile with the foregoing principles. The strongest of these is *Green Bay National Bank* v. *Dearborn,* 115 Mass. 219. In that case the plaintiff discounted Parks & Co.'s draft on Harvey Scudder & Co. against a railroad receipt, of which the following were the material words: "Received from R. G. Parks & Co. one hundred barrels of flour consigned to Harvey Scudder & Co., Boston." This was delivered

to the plaintiff in Wisconsin, on the understanding that the property was thereby transferred as security for the advance. Scudder & Co. declined to accept the draft, and the goods were attached by the defendant. The plaintiff brought replevin and was held entitled to recover. It will be observed that the document did not run to order, and was not indorsed, so that it could not be argued that the railroad company had attorned in advance, and there was no notice to the company, so that it had not made itself the plaintiff's bailee subsequently, if ordinary principles were to be applied. It was said, however, that the carrier became the plaintiff's bailee from the time its receipt was delivered. A carrier does stand differently from other bailees in one respect. He has no *delectus personarum*, but is bound to carry for any one who takes proper steps to make him do so. There is, too, the further circumstance, that the usual mode of shipping grain is to draw against it, and to get a bank to discount the draft. But it may be doubted whether the suggestion was warranted that a carrier would not ordinarily give up the goods except upon a production and surrender of the receipt. *Forbes* v. *Boston & Lowell Railroad*, 133 Mass. 154, 158. And, so far as the language might seem to imply that the mere passing of the property, as between the parties, made the carrier bailee for the plaintiff by the general law of bailment, it seems to us too broad. Cf. *Henderson* v. *Comptoir d'Escompte de Paris*, L. R. 5 P. C. 253.

But whatever the scope of *Green Bay National Bank* v. *Dearborn*, we cannot apply it as a precedent in the present case, so long as *Lanfear* v. *Sumner* stands. When a private warehouseman, who has an unfettered right to choose the persons for whom he will hold, gives a receipt containing only an undertaking to his bailor personally, without the words " or order," or any other form of offer or assent to hold for any one else, it is impossible to say that a mere indorsement over of that receipt will make him bailee for a stranger. He has not consented to become so, even under the principles argued for by Mr. Benjamin. And, until he has consented to hold for some one else, he remains the bailee of the party who entrusted him with the goods. There was therefore nothing done in this case to satisfy the rule of *Lanfear* v. *Sumner*.

If it be suggested that the rule would not help a party chargeable with notice, and that the fact that the receipt had been indorsed over amounted to constructive notice to the defendant, the answer is, that, supposing notice would have put an end to his right to attach, when there had not been a delivery or its equivalent, the defendant was not bound to inquire for the receipt. To call such an instrument a key to the goods, is a *petitio principii*. For it assumes that the receipt must be produced in order to obtain them, or that a transfer of it without the bailee's knowledge will affect his rights. But the bailor is not bound to produce the receipt as a condition precedent to his right to get back the goods on payment of charges, and the bailee can safely deliver the goods without it.

The appeal to commercial usage cannot help the plaintiffs' case. If there be any usage to treat such documents as this as symbols of property, in the sense of the argument for the plaintiffs, it is simply a usage to disregard well-settled rules of law affecting the rights of third persons. But we doubt if a prudent merchant would advance on the indorsement of a private warehouse receipt not running to order, before he had made sure of the warehouseman's assent. We are confirmed in the view which we take, by observing that the Legislature, in dealing with public warehousemen, and providing that " the title to goods stored . . . . shall pass to a purchaser or pledgee by the indorsement and delivery to him of the warehouseman's receipt," (Pub. Sts. *c.* 72, § 6,) as a preliminary to that result, expressly requires, in § 5, that the receipt " shall be negotiable in form."

*Judgment for the defendant.*