[Filed November 23, 1885.]

## J. K. GILL & CO. *v.* L. H. FRANK, M. KOSHLAND, GARNISHEE.

ATTACHMENT.— An attaching creditor is to be deemed a purchaser in good faith and for a valuable consideration from the date of the attachment.

WAREHOUSEMAN— WAREHOUSE RECEIPT — ASSIGNMENT — EFFECT OF.— When by a warehouse receipt it is agreed to deliver the property to anyone to whom the receipt may be indorsed as to one or *his order,* a symbolical delivery of the property may be effected by transfer of the receipt, and the warehouseman in such case becomes bailee to such transferee.

ID.—But when a warehouseman by his receipt restricts his undertaking to delivery of the property to his bailor personally, a change in the possession of such property, so that his custody would become the possession of a stranger, cannot be effected without his consent. (*Solomon* v. *Bushnell,* 11 Oreg. 277, distinguished.)

MULTNOMAH COUNTY. The garnishee appeals. Affirmed.

The facts are stated in the opinion.

*Alfred F. Sears, Jr.,* and *Raleigh Stott,* for Appellant.

A transfer of a warehouse receipt operates as a transfer of the property in the hands of a warehouseman. The delivery of the receipt is the delivery of the goods. (*Solomon* v. *Bushnell*, 11 Oreg. 277.) But slight proof of a delivery is required. (Smith Const. pp. 8–10; 2 Greenl. Ev. § 297, Redfield's ed.) Any act which shows that the vendor intended to part with his control over the property, his legal title thereto, suffices. (*Potter* v. *Washburn*, 13 Vt. 558; 37 Am. Dec. 615.) The legislative assembly of the State of Oregon passed an act making warehouse receipts negotiable. This act went into effect on the 23d day of May, 1885, and was the law at the date the warehouse receipt and assignment were offered in evidence. It then being a negotiable instrument, all that was required was to offer the receipt and assignment and prove the signatures. (*Sawyer* v. *Warner*, 15 Barb. 282; 1 Daniel Neg. Inst. 3d ed. 717, n.) To this it may be answered that this was not the law at the date of the transfer. But this is no answer, for the legislature has the right to alter or change the rules of evidence. (Cooley Const. Lim. 3d ed. p. 288, and authorities cited.)

*M. G. Munley*, and *E. B. Watson*, for Respondent.

There was no proof of the delivery of the assignment to Gross. The assignment itself is no proof of such delivery. The recitals in it, "for value received," etc., are not evidence against third parties. (2 Wharton Law of Ev. § 1041, n. 4; *Hill* v. *Draper*, 10 Barb. 454; *Sharp* v. *Speir*, 4 Hill, 76.) The legal presumption on the facts testified to by the garnishee's witness, Bernheim, is that the judgment debtor, L. H. Frank, continued in possession of the warehouse receipt with the assignment indorsed thereon until it came back again into Bernheim's hands. (2 Wharton Law of Ev. § 1284.) That a delivery of the warehouse receipt is necessary, where there is no actual delivery of the property itself, to pass the title, is well settled. (*Buffington* v. *Curtis*, 15 Mass. 528; *Allen* v. *Williams*, 12 Pick. 297; *Whittle* v. *Skinner*, 23 Vt. 531; *Palmer* v. *Merrill*, 6 Cush. 282; *Risley* v. *Phenix Bank*, 83 N. Y. 328.) Assignment by indorsement and delivery of the warehouse receipt passes no

interest in the contract, but only the title to the property. (*Solomon* v. *Bushnell*, 11 Oreg. 277.)

LORD, J.—This is an appeal from a judgment in favor of the plaintiffs, by M. Koshland, the garnishee. The bill of exceptions shows that at the trial the plaintiffs introduced testimony tending to prove that the garnishee had property in his possession belonging to the judgment debtor, at the the time of the garnishment, of the value of $1,400, and rested. The garnishee then introduced A. Bernheim as a witness in his behalf, who testified that he was the garnishee's agent and manager at his warehouse when the garnishment was made; that he received the property in litigation from the judgment debtor, and gave a warehouse receipt therefor, which was afterwards returned to him, but that it was not returned to him by Frank to whom it was issued, nor by Gross, to whom, by an indorsement on the back, it purported to be assigned. The garnishee offered the warehouse receipt with the assignment indorsed thereon in evidence. The plaintiffs objected on the ground and to the effect that the receipt and the indorsement purporting to be an assignment thereof showed no delivery to Gross, which the court sustained. The correctness of this ruling is the only ground of alleged error it is necessary for us to consider. The contention of the appellant is that a transfer of a warehouse receipt operates as a transfer of the property in the hands of a warehouseman, and the delivery of the receipt is the delivery of the goods, and consequently, that the receipt and indorsement was evidence of the fact that Frank was not the owner of the goods. Before applying the principles of law which, we conceive, are applicable to the case, it is well to note the facts to which they are to be applied. The warehouse receipt given by the garnishee and bailee to Frank, and purporting by its indorsement thereon to have been assigned by Frank to Gross, was a plain undertaking to deliver to Frank, his bailor, personally, the parcels of goods therein enumerated, upon the payment of certain charges, etc. It is without the words "or order," or any other form of words which may be construed into an agree-

ment or offer of the garnishee to hold the goods intrusted to his care for anyone else. The evidence of the managing agent of the garnishee further shows that the receipt with its indorsement somehow came back into his possession, but how and in what way he does not know, except that he is certain it was not returned to him either by Frank or Gross, to whom it purported to be assigned. In the light of all the facts, the inference is very strong, there never was any delivery of the assignment to Gross. Howsoever the return of the receipt may have been effected, the probabilities are it was for the purpose of having the transfer of the property accomplished through a new warehouse receipt. If this be true, it shows that the parties did not expect or understand any change in the possession of the property would take place by force of the assignment, without the consent of the bailee. Nor is there any other construction which can be given to the facts as disclosed, that would be consistent with the contract of bailment, without subjecting the appellant to unfavorable criticism. It must be noted that as against third persons an attaching creditor is to be regarded as a purchaser in good faith and for a valuable consideration, and in order to defeat his right in the premises there must be such a change of possession or delivery of the goods as passes the property. When the terms of the receipt are such that the warehouseman offers or undertakes to deliver the property to whomsoever that receipt may be indorsed, a symbolical delivery may be effected by its assignment or delivery, and he becomes bailee to such assignee in accordance with the terms of his contract. In such case, a delivery of the receipt is a symbolical delivery of the property itself. But when a warehouseman accepts the custody of property, and by his receipt as bailee restricts the promise or undertaking to deliver the property to his bailor personally, and upon the condition of the payment of charges, etc., a change in the possession of such property cannot be effected, so that his custody should become the possession of a stranger, without his consent or the violation of his agreement. He has got the possession of the goods, and his assent is necessary to effectuate a change in such possession whether the

receipt is assigned or not. When it is proposed, therefore, to give an assignment the effect of a delivery of the goods as against an attaching creditor, the receipt and its assignment, taken together, ought to be broad enough at least to authorize such a construction. It may not be amiss to observe that there is an important distinction between this case and *Solomon* v. *Bushnell,* 11 Oreg. 277. There the wheat receipt was in a form to authorize the construction given to it upon well settled principles of law. It contained an express promise or undertaking of the warehouseman to his bailor "to deliver to his order," with usual conditions as to damages by fire and charges for storage. There was, therefore, no difficulty in construing its terms, when indorsed and delivered, as a symbolical delivery of the property itself, and consistently with commercial usage as applied to other documents not negotiable in the technical sense. In *Hallgarten* v. *Oldham,* 135 Mass. 1, Holmes, J., ably examines this subject, and although the rule adopted in that State, as to delivery, when applied to an attaching creditor is, probably, more strict than here, the principles of law which he applies to receipts of the character under consideration is peculiarly in point. He said: "The question is, then, how the transfer of any document can have that effect. The goods are in the hands of a middleman, and they remain there. A true change of possession could only be brought to pass by his becoming the servant of the purchaser for the purpose of holding the goods, so that his custody should become the possession of the master. But this is not what happens, and it has been held that less would satisfy the law. A carrier or warehouseman in this case is not the servant of either party *quoad* the possession, but a bailee holding in his own name, and asserting a lien for his charges against all parties. He has possession of the goods, whether the document is transferred or not. But it has been held that the principle of the rule requiring a delivery is satisfied although the letter of it is not, if the possessor of the goods becomes the purchaser's bailor. (*Tuxworth* v. *Moore,* 9 Pick. 347; *Russell* v. *O'Brien,* 127 Mass. 349–354; *Dempsey* v. *Gardner,* 127 Mass. 383.) Now it is obvious that a custodian

cannot become the servant of another in respect of his custody except by his own agreement. And *a fortiori* when that custodian does not yield, but maintains his own possession, it is clear that his custody cannot enure to the benefit of another, as if it were the possession of that other, unless the bailee consents to hold for him subject to his own rights. The only way, therefore, in which a document can be a symbol of goods in a bailee's hands, for the purpose of delivery to a purchaser, is by showing his consent to become the purchaser's bailee. It may or may not be true that, if a warehouse receipt contains an undertaking to deliver to order, that undertaking is to be regarded as an offer by the warehouseman to any who will take the receipt on the faith of it, and that it will make him warehouseman for the indorsee, without more, on ordinary principles of contract. That is the argument of Benjamin on Sales, 676, *et seq.,* criticising *Farina* v. *Home,* 16 Mees. & W. 119, and Blackburn on Sales, 287. But the criticism and case agree in the assumption that the only way in which an indorsement of a document of title can have the effect of a delivery is by making the custodian bailee for the holder of the document, and that he cannot be made so otherwise than by his consent. The necessity for notice, in those cases where notice is necessary, stands on the same ground. If the custodian has not assented in advance, he must assent subsequently; and the principle is the same whether an express acceptance of a delivery order be required, or it is held sufficient if he does not dissent when notified. (*Boardman* v. *Spooner,* 13 Allen, 353, 357; *Carter* v. *Willard,* 19 Pick. 1–3; *Bentall* v. *Burn,* 3 Barn. & C. 423.) When a private warehouseman, who has an unfettered right to choose the person for whom he will hold, gives a receipt containing only an undertaking to his bailor personally, without the words " or order," or any other form of offer or assent to hold for anyone else, it is impossible to say that a mere indorsement over of that receipt will make him bailee for a stranger. He has not consented to become so, even under the principles argued for by Mr. Benjamin. And until he has consented to hold for some one else he remains the bailee of the party who

intrusted him with the goods." In the case at hand the court was called upon to say whether the instrument as indorsed brought about a constructive delivery of the property. The evidence which preceded failed to show any delivery of the receipt as indorsed to Gross, or to account for its possession in the hands of the bailee, except in a way which strengthened the assumption that there was no delivery of it to Gross, and in the absence of anything to show assent of the custodian of the property to hold it for any other, the legal construction of its terms, as regulated by well-settled rules of law, necessarily excluded its introduction in proof of the fact of delivery. It was, therefore, inadmissible to show a symbolical delivery as against an attaching creditor.

As this action was commenced and the rights under it accrued prior to the recent act of the legislature making warehouse receipts negotiable, it has no application to the case. The judgment is affirmed.