[S. F. No. 5479. In Bank.—August 20, 1912.]

## R. E. CALLAHAN, Respondent, v. BETTY MARSHALL et al., Appellants.

WAREHOUSE RECEIPTS—ASSIGNMENT AS PAYMENT OF PURCHASE PRICE OF PROPERTY SOLD—FINDINGS—EVIDENCE.—In an action involving the right to the possession of certain liquors stored in a warehouse and evidenced by warehouse receipts, the evidence, although conflicting, is held to sustain the findings that the warehouse receipts had been assigned to the plaintiff by one of the defendants, who was a prior owner of the property, as a part payment on account of the sale of certain property by the plaintiff to the defendant, and not as a mere evidence of the defendant's good faith in the negotiations for such sale, to be returned if the sale fell through.

ID.—NON-NEGOTIABLE WAREHOUSE RECEIPT—ASSIGNMENT FOR PURPOSE OF CONFERRING RIGHT TO POSSESSION OF PROPERTY.—The assignment of a warehouse receipt made non-negotiable on its face is sufficient to give the right to the possession of the property represented thereby to the assignee, if the purpose of the assignment was not only to confer a right to the possession of the receipts, but to the possession of such property.

ID.—IMMATERIAL CLERICAL ERROR IN NAME OF ASSIGNEE.—A mere clerical error in the name of the assignee of one of such receipts is immaterial, where the defendants by their pleadings treated all of such receipts as indorsed to the plaintiff as assignee, and the action was tried on that assumption.

ID.—EVIDENCE—ERROR IN EXCLUDING EVIDENCE CURED BY ITS SUBSEQUENT ADMISSION.—Error in excluding evidence of the alleged purchaser of such property as to an agreement made with the seller at the time of giving a certain receipt for part of the purchase price is without prejudice, if the witness subsequently is permitted to testify fully as to what was said and done between them at that time.

ID.—QUESTION CALLING FOR CONCLUSION OF WITNESS.—A question addressed to such alleged purchaser as to whether the negotiations between himself and the seller were ever concluded by an agreement to make the purchase, called for a conclusion of the witness, and the answer thereto was properly stricken out.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

S. C. Denson, and H. B. Denson, for Appellants.

James M. Oliver, for Respondent.

THE COURT.—The district court of appeal of the third appellate district, when this appeal was before it for determination, rendered the following decision, written by Presiding Justice Chipman, and concurred in by Associate Justices Hart and Burnett:

"It is alleged in the third amended complaint: That, on April 28, 1909, plaintiff was and ever since has been entitled to the possession of certain liquors as evidenced by certain warehouse receipts of the Peninsula Warehouse Company, of the value of $2,000.00; that, prior to the commencement of the action, plaintiff made demand of defendants for the possession of said personal property which was refused. Plaintiff demands judgment for the possession of said goods or the value thereof.

"Defendants, in their answer, admit that the property mentioned in the complaint is stored in the said Peninsula ware-

house, which latter is conducted by defendant Heise, who 'is responsible for the same and for the business thereof'; deny that plaintiff is entitled to the possession of said property and admit its value to be over $2,000.00, but aver that defendant Marshall claims to be the owner thereof; admit the alleged demand for possession and refusal to deliver possession to plaintiff but deny the alleged unlawful withholding of possession; aver that plaintiff never at any time owned the said goods and aver that plaintiff 'obtained from J. M. Wilkins the possession of certain warehouse receipts, hereinafter mentioned, on or about April 19, 1909, by fraud and deceit hereinafter stated and without paying any consideration therefor.'

"As a second defense and by way of cross-complaint, defendants Marshall and Wilkins aver: That in February and March, 1909, defendant Callaghan Company, a copartnership, was operating said Peninsula warehouse; that defendant Heise has succeeded to the business and is now sole proprietor of said warehouse and in possession of said goods; that at four different dates in February and March, 1909, defendant Marshall, 'through her agent defendant J. M. Wilkins, stored and deposited' in the said warehouse the property in question and that said Callaghan Company issued its non-negotiable warehouse receipts for the goods at said times so as aforesaid stored in said warehouse; that the said receipts and the goods represented thereby 'were and ever since have been and now are owned by and the property of the defendant, Betty Marshall'; that about April 1, 1909, plaintiff was and ever since has been the agent and broker of Jerome Bassity Mercantile Company; that between said Callahan, said company and said Wilkins negotiations were pending for the purchase by said Wilkins of the property here involved and certain other saloon property; that on April 15, 1909, plaintiff demanded of said Wilkins that he deposit the said four non-negotiable receipts 'to show his good faith in the carrying out of the said proposed sale and purchase, and the said Wilkins, as the agent of this defendant Betty Marshall, on said 15th day of April, 1909, made the following indorsement upon each of said certificates, to wit: "To the order of R. E. Callahan. Betty Marshall, J. M. Wilkins, agent," and then and there delivered the said four warehouse receipts to him the said R. E. Callahan,'

who receipted for the same to said Wilkins as follows: '4/15/09. In addition to the above, the following warehouse receipts have been assigned to R. E. Callahan as a deposit to show good faith in the said J. M. Wilkins carrying out the above agreement.' (Then follow the number and date of each receipt and a general description of the goods.) Signed, 'R. E. Callahan.' It is then averred in effect that said Callahan made false and fraudulent representations as to the value and earnings of the property, the subject of the negotiations,—namely, the Mohawk saloon at 128 and 130 East Street, San Francisco, its contents, fixtures, etc.; that, before the said negotiations were concluded, defendants discovered that they were being defrauded and said 'negotiations were broken off and ended, and said proposed sale and purchase was never concluded nor made'; that it was never intended by the parties that said Callahan should have possession of said goods and that said receipts were delivered to him 'as the evidence of good faith and ability on the part of the said Wilkins to comply with the terms and consummate the said proposed sale and purchase' and that plaintiff has now no right to the possession of said receipts or said goods; that plaintiff is financially irresponsible and should he retain possession of said goods he will immediately sell the same and thus deprive defendant Marshall of her property.

"Plaintiff, in his answer to the cross-complaint, denies the facts alleged as constituting the alleged fraud; avers that about April 1, 1909, said Wilkins, in connection with said negotiations, delivered to plaintiff his check for $250.00, 'as a deposit and part payment for the purchase of the aforesaid described property from the Jerome A. Bassity Company, being the property the subject of said sale and purchase, and that on April 15, 1909, the said Wilkins, 'agreeable to the demands of the said R. E. Callahan, as an additional deposit and further payment upon the aforesaid property, . . . delivered to the said R. E. Callahan the four non-negotiable warehouse receipts hereinbefore referred to and having indorsed upon the said warehouse receipts, the following indorsement, to wit.' Then follow the indorsements showing that one was indorsed by Betty Marshall and the other by Wilkins as her agent and all reading: 'To the order of R. E. Callahan.'

"The findings were against defendants as to the averments of fraud; that the averments of the complaint were true except the averment 'that the claims of said defendant Betty Marshall are without right' and as to her rights, 'if any,' that 'they are inferior and subject to the right to the possession of the plaintiff to said property and the whole thereof'; that the negotiations for the purchase of the properties mentioned in defendants' cross-complaint 'were concluded and the said purchase was consummated prior to April 25, 1909'; that it is not true that it never was intended by the parties that plaintiff should have possession of said receipts and said property represented thereby or that said receipts 'were merely delivered to the said Callahan as evidence of good faith, or as evidence of the ability on the part of said defendant, J. M. Wilkins, or on the part of any other person, to comply with the terms or to consummate the said or any proposed or other sale or purchase, . . . and it is untrue that defendants, or any of them, are entitled to the possession of said warehouse receipts or any of them.'

"As conclusion of law the court found that plaintiff was 'entitled to judgment against the defendants A. P. Heise and Betty Marshall and each of them for the possession of the property described in plaintiff's third amended complaint or for the value thereof, to wit, $2,000.00, and costs of suit.'

"Judgment of dismissal was entered as to all defendants save defendants Betty Marshall and A. P. Heise, and as to them judgment was given for the possession of the property or its value and for costs of suit.

"The appeal is from this judgment on statement of the case.

"Plaintiff introduced evidence tending to show the following facts: That plaintiff, as the agent of Jerome A. Bassity Mercantile Company, the owner of a certain saloon and its equipment and also the holder of a lease of the premises in which the saloon business and a lodging-house were being carried on, entered upon negotiations with defendant J. M. Wilkins for the sale to him of the saloon property and leasehold; Wilkins was admittedly the agent of defendant Marshall but whether or not she was interested in the proposed sale and purchase does not appear; she was the owner of certain liquors on store in the Peninsula warehouse under the control and management of defendant Heise; the purchase price of the

Bassity property was $11,000.00, of which Wilkins was to pay $3,000.00 cash and give a chattel mortgage to secure the payment of the balance, $8,000.00    Plaintiff's evidence was that, in the course of the negotiations, Wilkins agreed to assign and did assign to plaintiff the warehouse receipts referred to in the pleadings as part payment on the purchase price, the goods to be appraised at their value and credited on the eight thousand dollar mortgage; that the deal was closed on April 15, 1909; the cash register was locked and the bartenders informed that Wilkins was in charge from that date; that the cash register was locked pending the payment of the $3,000.00 which was to be made in a few days and at the same time the chattel mortgage to be delivered to secure the balance; that, on the 23rd of April, the parties met at the saloon at which time Wilkins had a check for $3,000.00, but did not deliver it because requested to split the amount into certain parts which were to go to different persons; that the cash register was unlocked and the money counted and found to fall short of the daily receipts which defendants claimed had been represented by the plaintiff and guaranteed to be the average daily receipts, and, after some parleying, defendants declared the trade off.  As to the alleged false representations of the average daily receipts of the saloon, plaintiff's evidence was that the representations had reference to a definite period prior to the negotiations and there was evidence that the representations were true and that plaintiff made no other representations in relation to the earnings of the saloon.  There was evidence also sufficient to justify the finding as to the other representations with regard to the property, made by plaintiff, which were alleged by defendants to have been false.

"The principal issue of fact tendered by the pleadings was —whether the warehouse receipts were assigned to plaintiff for the purpose as alleged by defendants, i. e., merely as evidence of Wilkins's good faith in the negotiations but to be returned if the trade fell through, or, as alleged by plaintiff, as a payment on account of the purchase of the property by Wilkins. The evidence was sharply conflicting on this issue, but the conflict was resolved by the trial court in favor of plaintiff and with its conclusions, under well settled rules, we cannot interfere.

"Appellants contend with much force that the warehouse receipts were non-negotiable—on their face so declared—and the form of indorsement upon them carried neither right to the property nor to its possession. Reliance is placed upon the statute, Civil Code, section 1858b and section 1858d and upon the rule as stated in *Gill* v. *Frank,* 12 Or. 507, [53 Am. Rep. 378, 8 Pac. 764]. If it were necessary to distinguish that case from the present one it might be pointed out that in the case cited the evidence was that the warehouse receipt in question was not returned to the warehouseman either by the person to whom it was issued or by his purported assignee. The court seemed to be of the opinion, upon the facts shown, that it was never intended by the assignment that there should be any change of possession of the property and hence the garnishment was ineffectual. But in the present case there was evidence that the purpose of the assignment was not only to confer a right to the possession of the receipts, but to the possession of the property represented by them. Indeed, the evidence went further and would have justified a finding that the assignment was intended to pass title to the property, had the pleadings warranted it. The court, however, adjudged only the right to the possession of the property and in this it was justified by the evidence.

"The discussion upon the effect of the assignment as a question of technical law is inapt for the reason that there was evidence showing what effect it was the intention of the parties should be given the indorsements.

"2. One of the warehouse receipts shows an indorsement 'to the order of T. E. Callahan' and it is claimed that the judgment as to this receipt has no evidence to support it and, as it is impossible to say how much of the gross value of the goods was represented by this receipt, the judgment must be reversed. A sufficient answer is found in the fact that in their pleadings defendants treated all the receipts as indorsed to plaintiff; they admitted delivery to plaintiff and the cause was tried on the assumption that the indorsements were in plaintiff's name as assignee. The evidence showed that it was Wilkins's intention to indorse all the receipts to plaintiff. Obviously, the error in the indorsement was clerical. The misstake seems not to have been discovered until after the trial.

"3. Defendant Wilkins testified in his own behalf. In his testimony he introduced a receipt dated April 7, 1909, signed by plaintiff, which, among other things, acknowledges the receipt of the 'sum of two hundred and fifty dollars by check on Merchants' National Bank as a deposit and part payment of the purchase price of that certain saloon . . . and the leasehold interests' (describing the property the subject of the negotiations). Also stating the purchase price 'as per letter submitted by J. M. Wilkins, a copy of which is herewith handed to Mr. Wilkins. Subject also to said Wilkins arranging definitely . . . for a lease on certain property he is the owner of.' To this receipt is attached another receipt of date 4/15/09, already referred to, being the receipt for said warehouse receipts. Counsel for defendants then asked the witness: 'What was said and agreed upon between you and Mr. Callahan at that time in regard to that $250 check?' An objection that 'the paper speaks for itself and is the best evidence, that there is nothing ambiguous or unintelligible' about it, was sustained. Error is claimed of this ruling. The witness was permitted to answer what understanding or agreement was had between him and Mr. Callahan 'at that time in addition to this receipt.' He then proceeded at much length to state what was said and done between them at that time, which apparently embraced all that counsel desired to know. We discover nothing prejudicial in the ruling.

"4. In the course of this witness's testimony he was asked: 'Was this negotiation ever concluded by an agreement to make the purchase? A. No, sir.' A motion to strike out the answer was granted. The question seems to have called for a conclusion rather than for a fact. The question at issue depended upon what occurred between the parties and as to this the facts were brought out very fully by witnesses on both sides and from these facts the court was to judge whether an agreement to purchase was concluded.

"5. Defendants, at a late stage in the trial, offered to read into the record the chattel mortgage which was never delivered. An objection was sustained as immaterial and incompetent. Defendants claim that it was material 'to show that the pretended sale had not been completed.' Every fact relating to the mortgage, its execution and acknowledgment, but not its delivery, was shown, and why it was not delivered. It was

not suggested that any provision of the mortgage could have thrown additional light on the issues. We cannot see that its inclusion in the record could have availed defendants anything. It did not appear that plaintiff ever saw it or knew its contents.

"6. It is claimed that the motion for a nonsuit, made at the close of plaintiff's evidence, should have been granted and that nothing occurred in the further proceedings 'to strengthen or enlarge plaintiff's right to the possession of the goods sued for.'

"In this defendants are in error. In support of the cross-complaint defendants introduced much evidence relating to the issues there presented. This was met by plaintiff with evidence which very materially strengthened the case as it appeared when the motion was made. It was in this evidence we find that the warehouse receipts were delivered, and that the delivery was for the purpose and with the intention as hereinbefore pointed out, and in this evidence is to be found support of the findings negativing defendants' averments of fraud.

"It may be conceded that, had the court taken defendants' view of the evidence, it would have supported different findings and a different judgment. But inasmuch as the view in fact taken by the court finds support in the evidence, we can discover no just ground for a reversal."

A further hearing on said appeal was granted by this court, and the argument of counsel thereon was directed exclusively to the contention of appellants that, in point of law, the indorsements in favor of plaintiff, made on the non-negotiable warehouse receipts involved here, were invalid under sections 1858b, and 1858d of the Civil Code, and that the delivery of said receipts to plaintiff so indorsed was ineffectual to transfer the right to possession of said property to him. Further consideration of this point satisfies us that the conclusion of the district court, as declared above, respecting it was correct. As to the issues of fact in the case, it was conceded by appellants on the argument here that there was a conflict in the evidence upon which the findings respecting them are based, and no attack was made on such findings. As to the rulings of the trial court complained of by appellants, they are fully considered and correctly disposed of in

the opinion of the district court. With that opinion as a whole we agree, and adopt it as the view of this court on the further consideration of this appeal.

The judgment is affirmed.