20  118
20  546
20  551

FIRST NATIONAL BANK OF MILES CITY, RESPONDENT, *v.* WILLIAM H. BULLARD, APPELLANT.

[Submitted June 22, 1897.  Decided July 10, 1897.]

*Negotiable Paper—Statute of Limitation—Payment by Joint Maker—Agency, Evidence Of.*

1. STATUTE OF LIMITATION.—Under the Statutes of Montana, one joint maker of a note, by a partial payment thereon after maturity without the assent or ratification of his co-makers, binds only himself so far as an extension of the statutory period of limitations is concerned.

2.  AGENCY—*Evidence of.*—Evidence of a witness who testifies that he understood that
     one of several joint makers of a note was authorized by the others to make payments
     on the note for them, is not sufficient to prove his agency for that purpose.

*Appeal from District Court, Custer County. George R. Milburn, Judge.*

ACTION by the First National Bank of Miles City against William H. Bullard.   From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals.

Statement of the case by the justice delivering the opinion.

On September 28, 1885, at Miles City, Montana, six persons executed a promissory note for $1,000, payable, on demand, to the First National Bank of Miles City.   It appears that the principal who signed the ·note was one Alfred Ward.   The other persons, although joint makers of the note, signed the same, as to Ward, only as sureties.   One of these makers was Joseph Leighton, at the time, and subsequent thereto, president of the payee bank.   Another was W. H. Bullard, the defendant and appellant in this action.   Three payments were indorsed on this note as follows:   April 30, 1886, $181.10;   October 25, 1886, $81.19;   May 4, 1888, $42.40.

On the 29th day of December, 1885, said Ward, for the purpose of indemnifying his co-signers of the note, executed to them a chattel mortgage on certain personal property—the fixtures and furniture of a saloon—of which he was the owner. On April 30th, the mortgagees, having taken possession of said chattels, caused the sheriff of Custer county to sell the said property.   At this sale defendant, Bullard, purchased a piano, paying therefor the sum of $184.   The remainder of the property was sold in bulk to Leighton.   On the same or the next day the sheriff had a settlement with Leighton, and turned over to him, as the net proceeds of the sale, the sum of $422.60.   Leighton, as president of the bank, caused the payments to be indorsed on the note in the sums and at the times specified thereon.   On August 10, 1893, the bank brought suit against Bullard for the balance due on said note.

The plaintiff on the trial introduced evidence for the purpose of showing that Leighton was the agent for his co-mortgagees in the chattel mortgage, and had purchased the property at sheriff's sale upon the understanding and agreement that he should hold the property purchased by him, and, as he disposed of portions of it from time to time, should make indorsements on the note. The testimony introduced to establish the fact of this agreement was as follows:

E. B. Weirick, cashier of the bank, stated: "At the time this stuff was sold under the mortgage, Mr. Leighton bid it in, in the interest of the signers of the note. He was one of the makers with Mr. Ward, Mr. Bullard, and others, and, under the foreclosure of the mortgage, he bid the property in. The indorsement here of Mr. Savage [referring to the first indorsement on the note] was for the sale, as I recollect, of the piano. Mr. Leighton was a little late in getting to the sale. His idea was to purchase the whole property there, so as to keep it intact to continue the business. This property was all bid in by Mr. Leighton, in the interest of the signers of the note under this mortgage, and he was to hold the property, and dispose of it as he could, and the proceeds of those sales were to be indorsed on the note. This indorsement of May 4, 1886, for $42.40 was the proceeds of a sale of the bar,—that is, the mirror and glass back of the bar,—and, under the instructions of Mr. Leighton, I suppose that was the case. I know that this property was held by him as agent for those people, to make any indorsement of proceeds of sale of this property, and at that time this glass and bar was sold, and the proceeds indorsed on this note. * * * My opinion was that Mr. Leighton intended to buy all the property there for the benefit of the makers of the note, with the understanding of continuing the business with the parties, and working out the amount of the note. I understood that it was the understanding among the makers of the note that Mr. Leighton should buy all the property in at the sheriff's sale, for the benefit of the makers. Mr. Bullard was one of the makers of that note. I don't know how there could have been an under-

standing between all of the makers of the note that Mr. Leighton was to buy in all the property, if it is a fact that Mr. Bullard arrived at that sale prior to Mr. Leighton getting there, and purchased the piano.''

Bullard in his testimony positively denies any such agreement between Leighton and himself in reference to the former buying the property for the benefit of all the mortgagees, and applying the proceeds as aforesaid.

The court, in its instructions to the jury, virtually told them that a payment by Leighton on May 4, 1886, would remove the bar of the statute of limitations (which is six years) as to all the joint signers of the note. The jury returned special findings to questions submitted to them. The first finding was as follows :

''We, the jury, in the above entitled action, find for the plaintiff in the sum of eight hundred sixty-one 53-100 dollars ($861.53), as per statement attached. [Signed]  A. Bitle, Foreman.   Dated August 22d, 1894.

STATEMENT.

Face of the note dated September 28th, 1885.................................................$1,000.00
Interest on same from date to August 21, 1894, eight years, ten months, twenty-
   three days, at 12 per cent................................................................ 1,067.67

Total......................................................................................$2,067.67

PAYMENTS ON ABOVE NOTE.

November 24th, 1885.........................................................................$100.00
Interest on same to August 21, 1894, 8 years, 8 months, 27 days............ 104.90
April 30th, 1886............................................................................. 422.60
Interest on same to August 21, 1894, 8 years, 3 months, 21 days............ 421.33
October 25th, 1886.......................................................................... 81.19
Interest on same to August 21, 1894, 7 years, 9 months, 26 days............ 76.12

Total.....................................................................................$1,206.14

$ 861.53

''Note—The above item 'April 30th, 1886, $422.60,' includes the $42.40 paid to bank May 4th, 1886, and also item of $181.10, paid bank April 30th, 1886.''

The appeal is from an order denying a motion for a new trial and a judgment in favor of plaintiff.

Section 53, First Division of the Compiled Statutes Montana 1887, is as follows :   ''No acknowledgment or promise

shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this act, unless the same is continued in some writing signed by the party to be charged thereby; but this act shall not alter the effect of any payment of principal or interest."

Section 54, *Id.*, reads thus : "Whenever any payment of principal or interest has been or shall be made upon an existing contract, whether it be bill of exchange, promissory note, bond or other evidence of indebtedness, if such payment shall be made after the same shall have become due, the limitation shall commence from the time the last payment was made."

Section 1296, Fifth Division, *Id.*, is as follows : "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants."

*C. R. Middleton* and *John B. Clayberg*, for Appellant.

*Strevell & Porter*, for Respondent.

BUCK, J.—The question in this case, most elaborately discussed by respective counsel in their oral argument and briefs on file, is whether or not a part payment by one of the several joint makers of a note after it is due, without the consent or ratification of the others, extends the time prescribed by the statute for an action thereon as to all.

A leading authority relied upon by respondent is a decision rendered by Chief Justice Shaw in the case of *Sigourney* v. *Drury*, 14 Pick. 387. Among the authorities for the view contended for by appellant, we have deemed especially worthy of our consideration the cases of *Willoughby* v. *Irish* (Minn.) 27 N. W. 379, and *Cowhick* v. *Shingle* (Wyo.) 37 Pac. 689. The Minnesota decision construes a statute almost identical in its terms with Section 53, First Division of the Compiled Statutes of Montana 1887. In the Wyoming case the authorities on both sides of the proposition are cited and discussed in detail. The courts of this country are in conflict, but in our opinion the more modern and better reasoned decisions answer the question in the negative. We hold, therefore, that, under

the statutes of Montana, one joint maker of a note, by a par-
tial payment thereon after its maturity, without the assent or
ratification of his co-makers, binds only himself, so far as an
extension of the statutory period of limitations is concerned.
The lower court erred in the view of the law it announced on
this question to the jury.

We come next to the evidence on which the judgment for
plaintiff is based.    A careful analysis of the statements made
by the witness Weirick forces us to the conclusion that his
evidence as to the understanding between Leighton and the
other mortgagees was the result of a mere opinion entertained
by himself, without any actual knowledge as a basis for it.  It
is true, he declares positively that Leighton was authorized to
sell the property he had bought in, and apply the proceeds of
sales from time to time on the note.   But, however positive
his assertion may be, he destroys its force by finally admit-
ting that "it was his opinion that there was such an under-
standing;" "that he understood there was such an under-
standing."   It was incumbent upon the plaintiff to prove that
the note was not barred as to the defendant, Bullard, and the
only evidence offered by it on this issue was that of Weirick.
The lower court should have granted a new trial for insuffi-
ciency of the evidence.

Moreover, it is apparent, from an inspection of their first
finding, that the jury believed that Leighton, as president of
the bank, should have applied and indorsed the entire pro-
ceeds of the mortgage sale,—namely, $422.60,—on April 30,
1886, when he receipted to the sheriff for that sum of money.
It is inconsistent with some of the other findings returned.
These findings, however, were mere conclusions of law, and it
is unnecessary to recite them.

For these reasons, the judgment is reversed, and the cause
is remanded, with directions to the lower court to grant a new
trial.

*Reversed and Remanded.*

Pemberton, C. J., Hunt, J. concur.