THE HON. HENRY C. SMITH, } Associate Justices.
THE HON. WILLIAM L. HOLLOWAY,

MONIDAH TRUST, APPELLANT, v. KEMPER, RESPONDENT.

(No. 3,008.)

(Submitted September 21, 1911. Decided October 30, 1911.)

[118 Pac. 811.]

*Promissory Notes—Statute of Limitations—Part Payment by Joint Obligor—Does not Suspend Running of Statute as to Nonconsenting Obligor.*

Promissory Notes—Statutes of Limitations—Joint Obligors—Part Payment by One—Effect.
    1. In 1893, defendant K. and two others executed and delivered their joint and several note, due six months after date. In 1895, 1901, 1904 and 1906 one of K.'s joint debtors made certain part payments without K.'s knowledge, which payments were not subsequently ratified by him. In defense to an action brought in 1910 by the then holder of the note, K., the only defendant served with process, interposed the bar of the statute of limitations. *Held*, under section 6472, Revised Codes, that one joint debtor, by making part payments, may not suspend the running of the statute as to his joint obligors who do not authorize or ratify his act, and that, therefore, the court properly found in favor of defendant.

Same.
    2. The provision of subdivision 5, of section 7887, Revised Codes, that evidence may be given of the act or declaration of a "joint

debtor, or other person jointly interested with the party," etc., *held* not to militate against the rule declared in paragraph 1 above.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by the Monidah Trust against S. V. Kemper. From a judgment for defendant, plaintiff appeals. Affirmed.

For Appellant, there was a brief by *Mr. James E. Healy* and *Mr. James E. Murray,* and oral argument by both.

*Messrs. Maury & Templeman,* and *Mr. J. O. Davies,* for Respondent, submitted a brief; *Mr. Templeman* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On November 20, 1893, Albert B. Knight, S. V. Kemper, and C. F. Booth executed and delivered to James A. Murray their joint and several promissory note for $1,000, due six months after date. In March, 1905, the note was sold and transferred by Murray to this plaintiff, and on July 18, 1910, this action was brought to enforce payment. The complaint sets forth the facts of the execution and delivery of the note, the transfer of it by Murray to the plaintiff, and alleges that no part of the principal or interest has ever been paid, except certain payments made during 1893 and 1894, which payments appear to equal the amount of interest due during those years: $60 paid in 1895; $1.50 paid in 1901; $14 paid in 1904; and $149.50 paid in 1906. Kemper was the only defendant served with process, and he appeared and answered, admitting the execution and delivery of the note, denying the other allegations of the complaint, and pleading the bar of the statute of limitations. Upon the trial, the plaintiff proved the transfer and nonpayment of the note. Respecting the partial payments made prior to July 5, 1895, there is not any evidence, but it was made to appear that every

subsequent payment was made by the defendant Knight or by his personal representative. Defendant Kemper, in his own behalf, testified that he had never made any payment upon the note, had never authorized anyone for him to make a payment, and never knew that any payments had been made, until informed by Mrs. Knight shortly before this action was commenced, and some three years after the last payment was made. There was not any showing of ratification by Kemper of the acts of Knight or his personal representative. Upon these facts the court found for defendant Kemper, and rendered judgment accordingly. From that judgment, the plaintiff has appealed, and presents for our determination the single question: May one joint debtor, by making part payments, suspend the running of the statute of limitations as to his joint obligors who do not authorize or ratify such acts? The same question has been before the courts many times.

The first English statute of limitations was adopted in 1632 (21 James I, c. 16). In 1781, when this question came before the English court, in *Whitcomb* v. *Whiting*, 2 Doug. 652, the question was answered in the affirmative. Lord Mansfield, speaking for the court, said: "Payment by one is payment for all, the one acting virtually as agent for the rest; and in the same manner an admission by one is an admission by all; and the law raises the promise to pay when the debt is admitted to be due." This doctrine was followed by the English courts for several years, though often criticised. (*Brandram* v. *Wharton*, 1 Barn. & Ald. 463; 19 Am. & Eng. Ency. of Law, 2d ed., 308; Greenleaf on Evidence, 15th ed., 112, and note.) In some of the American states, the doctrine was repudiated altogether; in others it was adopted and followed until changed by statute; but so unfavorably was it received that in most of our states it has been obliterated by statutory provision, until it is now recognized only in Connecticut, New Jersey, Rhode Island, Delaware, and possibly one or two other states.

In 1828 the English Parliament passed Lord Tenterden's Act (9 Geo. IV, c. 14), which provided that the acknowledgment by

one joint obligor should not operate to suspend the running of the statute as against his nonconsenting co-obligor. But this still left the fact of part payment to operate as theretofore declared in *Whitcomb* v. *Whiting.* However, in 1856, Parliament again amended the statute of limitations by the Mercantile Law Amendment Act (19 & 20 Vict., c. 97), which completely reversed the doctrine in *Whitcomb* v. *Whiting,* and since the latter date the doctrine of that case has not been invoked in England. Some of our American statutes were modeled after Lord Tenterden's Act, some after the Mercantile Law Amendment Act, and many of them contain the substance of both of the English statutes. Under Lord Tenterden's Act, the English courts held uniformly that the written acknowledgment of the debt bound only the obligor making such acknowledgment, but did not affect the nonconsenting co-obligor, and the same ruling has been had in the states having similar statutes.

Under section 53, First Division, Compiled Statutes of 1887, which reads: ''No acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this Act, unless the same is contained in some writing signed by the party to be charged thereby; but this Act shall not alter the effect of any payment of principal or interest''—this court, in *First Nat. Bank* v. *Bullard,* 20 Mont. 118, 49 Pac. 658, and in *Oleson* v. *Wilson,* 20 Mont. 544, 63 Am. St. Rep. 639, 52 Pac. 372, held that part payment by one joint debtor does not operate to suspend the running of the statute as to his nonconsenting co-obligor. In *Bank* v. *Bullard,* the part payment appears to have been made by one surety, and it was sought to bind his cosurety thereby, and prevent the running of the statute as to him. In *Oleson* v. *Wilson,* the part payments were made by the principal debtor, and it was sought thereby to bind the surety, but in each instance this court, following the decisions of courts quite generally, made no distinction between the two classes of cases, but treated all the signers of the notes as joint principals. Whatever may be

said of those decisions, they established the law of this state as it existed before the adoption of the Codes in 1895.

If section 53 of the Compiled Statutes above was indefinite in its terms or open to two constructions, the same thing cannot be said of our present Code provision. Section 6472, Revised [1] Codes, which has been in effect since July 1, 1895, reads as follows: "No acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby. But this section does not alter the effect of any payment of principal or interest, which payment is equivalent to a new promise in writing, duly signed, to pay the residue of the debt." It will be observed that to the provisions of section 53 of the Compiled Statutes there has been added the explanatory phrase, "which payment is equivalent to a new promise in writing, duly signed, to pay the residue of the debt." An acknowledgment of an existing debt is declared to be equivalent to a new or continuing contract to pay it. But, to be effective to suspend the running of the statute, such acknowledgment must be in writing, signed by the party to be charged thereby. Such written acknowledgment binds only the party making it; that is, it does not bind the joint obligors who do not authorize or ratify the act. This the courts have held uniformly, and the conclusion is founded in the soundest reasoning. (19 Am. & Eng. Ency. of Law, 2d ed., 313.) If, then, a written acknowledgment by one joint debtor does not operate to suspend the running of the statute as to his nonconsenting co-obligors, and part payment is equivalent to a new promise in writing, it follows, of course, that the effect of part payment is not greater and not less than a written acknowledgment; that is to say, it binds only the party making it, and cannot bind a nonconsenting joint obligor. The language of this Code provision, when considered in the light of previous legislative and judicial history upon the subject, cannot be open to any other construction.

Appellant places much reliance upon subdivision 5 of section 7887, Revised Codes, which reads as follows: "In conformity with the preceding provisions, evidence may be given upon a trial of the following facts: * * * 5. After proof of a [2] partnership or agency, the act or declaration of a partner or agent of the party, within the scope of the partnership or agency, and during its existence. The same rule applies to the act or declaration of a joint owner, joint debtor, or other person jointly interested with the party." The section is one of Title I, Part IV, of the Code of Civil Procedure, which is entitled "General Principles of Evidence." After dealing with the subject "Hearsay," the Code proceeds to state the well-recognized exceptions to the general rule, which excludes hearsay testimony, and, among other exceptions, enumerates those contained in subdivision 5 above. Whatever may be the full scope and meaning of the language thus employed, it must be borne in mind that the Code is here dealing with general principles of the law of evidence; that it is a general statute, applicable to all cases, civil and criminal; whereas, section 6472 is a special statute, applicable only to the subject, "Limitations of Actions." Furthermore, section 6472 is a part of Title II, Part II, of the same Code in which is found subdivision 5 above, and is entitled "Time of Commencing Actions." We do not think there is any conflict between the two provisions; but, if there is, our own Code furnishes the rule of construction. Section 3555, Revised Codes, provides: "If the provisions of any title conflict with or contravene the provisions of another title, the provisions of each title must prevail as to all matters and questions arising out of the subject matter of such title." So that, from any point of view, section 6472 determines the question here presented adversely to the appellant.

Interesting discussions of this subject are to be found in Wood on Limitations of Actions, Chapter 25; 19 Am. & Eng. Ency. of Law, 2d ed., 308, 312, 322; *Cowhick* v. *Shingle*, 5 Wyo. 87, 63 Am. St. Rep. 17, 37 Pac. 689, 25 L. R. A. 608; *Willoughby* v. *Irish*, 35 Minn. 63, 59 Am. Rep. 297, 27 N. W. 379; 25 *Cyc.*

1356, 1385; 1 Greenleaf on Evidence, 15th ed., sec. 112, and note; 8 Current Law, 788.

The judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.