No. 10,049.

The McKee Livestock Co. *v.* Menzel, et al.

Decided July 5, 1921.   Rehearing Denied October 3, 1921.

Action to determine priority of liens on chattel property. Judgment for defendants in error.

*Reversed.*

*On Application for Supersedeas.*

1. Liens—*Agistors—Statutory construction.* Section 4013, R. S., 1908, relating to agistors' liens, is in derogation of the common law and must be strictly construed.

2.   *Agistor's lien.* Exclusive possession is essential to support lien, which does not exist in favor of one who is a mere hired servant.

3. Appeal and Error—*Conflicting Testimony.* Where the testimony is conflicting, the judgment will not be reversed for insufficient evidence.

4. Evidence—*Conclusions—Leading Questions.* Testimony which consists merely of conclusions of the witness, and affirmative answers to leading questions propounded on redirect examination, is not evidence, is entitled to no weight against witnesses' contrary statements, and will not support a finding.

*Error to the District Court of Custer County, Hon. James L. Cooper, Judge.*

Mr. John A. Rush, Mr. Foster Cline, for plaintiff in error.

Messrs. Blunt & Hessick, Mr. James T. Locke, for defendants in error.

*Department Three.*

Mr. Justice Burke delivered the opinion of the court.

This cause was tried to the court without a jury and

judgment entered below giving defendants in error an agistor's lien to the amount of $6079.08 upon 304 head of cattle, and establishing the priority of that lien as against two recorded chattel mortgages on said property held by plaintiff in error. From that judgment the latter prosecutes this writ and asks the issuance of a supersedeas. The parties occupy the same relative position here as in the court below. The clerk of the trial court was appointed as receiver, the cattle were sold, and the sum in controversy is now in the hands of the clerk. The cause is fully briefed and both plaintiff and defendants request that it be finally disposed of on this application. The cattle in question belonged to the copartnership of B. Pepper & Co., of which Sam Pepper was the managing partner. Having apparently gone beyond his financial depth he disappeared leaving his creditors to satisfy their claims as best they could out of the tangible property of his firm. The copartnership was made a defendant herein and defaulted. Plaintiff was given a judgment against B. Pepper & Co. for the total unpaid amount of its claim, i. e., $18,170.49, and defendants a judgment against B. Pepper & Co. for $6079.08. The receiver had in his hands $3497.89 over and above the costs and expenses of the receivership and the claim of defendants and that sum was ordered paid to plaintiff. To such portion of the judgment no objection is urged which requires our consideration. The sole question to be determined here is the priority of the claims of the respective parties to said $6079.08 remaining in the hands of the receiver.

B. Pepper & Co. were engaged in buying, feeding, and selling cattle. A portion of those in dispute herein were bought in November, 1919, with money advanced by plaintiff and secured by a chattel mortgage recorded November 19, 1919. The remainder were purchased in December, 1919, with money advanced by plaintiff and secured by a chattel mortgage recorded December 26, 1919. Both mortgages describe these cattle as located on "the Kennicott place."

Defendants contend that they were so located in pursuance of an oral contract made by Charles A. Menzel (representing all the lien claimants) with Sam Pepper (representing B. Pepper & Co.) in the latter part of October, 1919; that the Kennicott place was in the possession of Charles A. Menzel; and that, while there kept and fed, these cattle were in the possession of defendant Dorsey Garnier, as the agent of all the lien claimants.

Plaintiff contends that there is no evidence of such a contract; that the Kennicott place, during the time in question, was in the possession of B. Pepper & Co.; and that Garnier was merely the hired servant of B. Pepper & Co. and that his possession was theirs.

There is much evidence and argument concerning the transfer of these cattle to other places at later dates, their care and feed by other persons, their return to the Kennicott place; their removal by plaintiff, the shipment of a portion of them, the seizure and return of the remainder by defendants. All this, in view of what is hereinafter said, becomes immaterial.

Our Statute, sec. 4568, M. A. S., Rev. Ed., sec. 4013, R. S. 1908, provides:

"Any ranchman, farmer, agistor, herder of cattle * * * or other person to whom any * * * cattle * * * shall be intrusted for the purpose of feeding, herding, pasturing, keeping or ranching, shall have a lien upon such * * * cattle * * * for the amount that may be due for such feeding, herding, pasturing, keeping or ranching, and for all costs incurred in enforcing such lien."

This statute is in derogation of the common law and must be strictly construed. *Bailey v. O'Fallon,* 30 Colo. 419, 420, 70 Pac. 755; *Auld v. Travis,* 5 Colo. App. 535, 539, 39 Pac. 357; *Ellison v. Tuckerman,* 24 Colo. App. 322, 326, 134 Pac. 163. Possession is essential to support the lien and that possession must be exclusive, *Auld v. Travis, supra.* No such lien exists in favor of one who is a mere hired servant of the owner. *Sorrells v. Sigel-Campion Co.,* 27 Colo. App. 154, 171, 148 Pac. 279.

Where the testimony is conflicting the judgment will not be reversed for insufficient evidence. *Hallack v. Stockdale,* 14 Colo. 198, 23 Pac. 340; *Lanham v. Copeland,* 66 Colo. 27, 178 Pac. 562. There is no evidence as to the alleged contract between Menzel and Pepper, under which the lien is claimed, save that of Charles A. Menzel. This consists solely of the statements by the witness as to what "the agreement was," what cattle were "referred to," whom Menzel "represented," what "the understanding" was and what "the purpose was." These were mere conclusions, repeatedly given, over repeated objections, and repeated demands for "what was said." The witness detailed no fact and recited the substance of no conversation, from which either the trial court or this court could determine the correctness of his conclusions. The observance of the rule that facts, not conclusions, are to be given, is particularly important where, as here, the only other witness (Sam Pepper) is beyond the reach of the process of the court. Under such circumstances the testimony was no evidence. Furthermore, Menzel introduced in evidence a written acknowledgment (dated March 16, 1920) of his indebtedness and lien. It fixes no date for the alleged lien and mentions no other claim than the individual claim of Charles A. Menzel. It could in no way bind plaintiff and its tendency is to deny the alleged contract and the priority of the lien claim.

Pepper had the Kennicott place leased from the owner and sublet it to Charles A. Menzel. Menzel's lease expired in February, 1918, while Pepper's lease had still two or three years to run. Menzel had an oral cropping agreement for the season of 1919, under which one-half the hay went to him and the other half to Pepper. He had removed from the place in March, 1918. He claimed an oral extension of his sublease for so much of Pepper's unexpired term as he desired. If any such existed it was in violation of Sec. 2662, R. S., 1908, and Menzel was not in possession under it.

On cross-examination the defendant Garnier, alleged agent for the lien claimants, and the only person who could

speak with authority as to his possession, testified absolutely and unequivocally that he was employed by Sam Pepper; that he was to get $60.00 per month for feeding and caring for the cattle; that he was doing other work for Pepper at the same time and being paid for it; that he acted by authority of Pepper; that he was under Pepper's orders and directions; that Pepper was running the business and was his boss. Under the most palpable leading he gave some testimony to the contrary. Every particle of this was put into his mouth over repeated and vigorous protests from counsel for plaintiff. The following are examples:

After the witness had covered the whole matter on direct and cross-examination an attempt was made to go over the ground again on re-direct. Objection being made counsel for defendants said: "If the court please, I would like to draw that out a little more fully, with reference to the fact that *he* himself employed these men, (other feeders whom witness had said were employed and paid by Pepper) and saw them, and arranged with them, and had supervision of the whole matter. Sam Pepper wasn't there and had nothing to do with it, and I would like to go into that matter a little more fully." The Court. "Well, be as brief as you can." Whereupon counsel proceeded to "draw it out a little more fully," thus:

Q. You arranged with them (the other feeders) to come and do this work, didn't you? A. Yes.

Q. But it was the agreement that Sam Pepper would pay the necessary help? A. Yes, sir, he was supposed to pay the help.

Q. And you were to get the help? A. Yes, sir.

Q. And you did that? A. Yes, sir.

Q. And that is the way these boys happened to be there, by your arrangement, was it? A. Yes, sir.

Upon such testimony the trial court found that defendant Garnier was in possession of the cattle for the lien claimants. It is no evidence, is entitled to no weight as against witness' contrary statements, and will not support

the "finding."    Garnier was the mere hired servant of Pepper.

There being no evidence of the contract for a lien, no evidence of defendants' possession of the ranch where the cattle were kept and fed prior and subsequent to the recording of plaintiff's mortgages, and defendants not having been in possession of the cattle during that time, their claims are junior and inferior to the lien of plaintiff's mortgages.    It becomes unnecessary to examine the remaining evidence, or consider other questions raised by the record and argued in the briefs.

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff.

MR. JUSTICE TELLER, sitting for MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BAILEY, concur.